UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61595-Civ-COHN
        (09-60181-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

STEPHEN LALONDE,                    :

        Movant,                     :

v.                                  :          REPORT OF
                                               MAGISTRATE JUDGE
UNITED STATES OF AMERICA,           :

        Respondent.                 :
_____

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and sentences following a guilty plea entered in Case No. 09-60181-Cr-Cohn.[1]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion, as supplemented, with supporting memorandum of law and attached exhibits (Cv-DE# 1, 4, 13); the government's response to an order to show cause with attached exhibits (Cv-DE# 14); the Presentence Investigation Report (PSI) and Addenda thereto; the movant's reply with attached exhibits (Cv-DE# 20); and all pertinent portions of the underlying criminal file.

---

[1]It is noted that Movant is not currently confined in the Federal Bureau of Prisons and is in the custody of the Broward County Sheriff. It appears that state court criminal proceedings are now being conducted in the Broward County Circuit Court.

## II. Claims

Movant is essentially raising the following grounds for relief:[2]

1.  He received ineffective assistance of counsel with regard to the entry of his guilty plea, because trial counsel operated under a conflict of interest when counsel represented both him and his wife.

2.  He received ineffective assistance of counsel, because trial counsel withheld information regarding persons who were responsible for committing the offenses and improperly failed to challenge the charges brought against him in that HUD was not involved.

3.  His pleas of guilty were involuntarily entered, because they were based upon (a) material misrepresentations made by the government and trial counsel that he would receive a sentence of 16 months based upon his cooperation with the government, (b) threats regarding otherwise indicting his wife, (c) counsel's conflict of interest, (d) his inability to pay counsel's fee if he proceeded to trial, and (e) counsel's assurances that he would not be deported.

4.  He was deprived of due process of law with regard to the presentence investigation and interview in that they were conducted in violation of Fed.R.Crim.P. 32; he received ineffective assistance of counsel with regard to the presentence investigation and interview; and his due process rights were violated during sentencing in that the Court failed to ensure that he and counsel had discussed the PSI, as revised, and that he and counsel had received all necessary documents from the probation officer before sentencing.

5.  His sentence is unlawful, because it is based upon

---

[2]Discerning the actual claims presented by Lalonde was no easy task. In his form petition, Movant presents twenty-five numbered claims and in his 130-page supporting memorandum of law has presented his claims as ten grounds for relief, although apparently raising numerous subclaims. See Cv-DE# 1. In his two supplemental memoranda no additional claims have been raised. See Cv-DE# 4, 13. Many of the claims are repetitive in nature and many of the claims can be grouped as a single claim. Consequently, in order to make sense of Movant's voluminous pleadings and to aid in the discussion of the claims, the undersigned has restated and renumbered the claims as indicated herein, although the claims will not be addressed in the same order in the Discussion section of this Report. The undersigned commends Assistant United States Attorney Laurie E. Rucoba on her thoughtful and thorough response filed in the instant proceedings which was most helpful to the undersigned when disposing of the motion to vacate.

incorrect statements made by the government and probation officer during sentencing and counsel failed to properly challenge those statements and the late disclosure of information not contained in the PSI.

6. He was improperly denied *Jencks* Act materials during sentencing.

7. The Court improperly denied an adjustment for acceptance of responsibility and he is now entitled to resentencing based upon the affidavit executed by Michael Ammundsen which contradicts the untimely affidavits supplied by former employee Whiting and other untimely materials.

8. The government breached the terms of the plea agreement when it objected to a reduction in the base offense level for acceptance of responsibility, when it recommended a sentence in the mid-range of his sentencing guidelines, and when it failed to reduce his sentence based upon his ongoing and extensive cooperation.

9. The Court improperly denied an unopposed motion to continue the sentencing hearing which was needed to give movant further opportunities to cooperate and he received ineffective assistance of counsel with regard to the motion for continuance.

10. He received ineffective assistance of counsel at sentencing, because his lawyer failed to (a) obtain all necessary materials from the government and adequately prepare for sentencing; (b) challenge the late disclosure of evidence presented at sentencing; (c) properly cross-examine the government's witnesses and/or present defense witnesses; (d) request a downward departure based on his extensive cooperation with the government, family obligations, aberrant behavior and alien status; (e) present mitigating evidence; and (f) request sentencing parity.

11. He received ineffective assistance of trial counsel, because counsel failed to seek the withdrawal of his guilty plea once he learned that he would be subject to removal from the United States as a result of his guilty pleas and that he was not receiving the benefit of his cooperation with the government.

12. He received ineffective assistance of appellate counsel, because his lawyer filed a "boiler plate" brief, merely raising the sole issue that he had been improperly denied acceptance of responsibility, as promised.

13. He was improperly denied his right to a direct appeal based upon the appeal waiver, because the government had breached the terms of the plea agreement when it

3

recommended a sentence in the mid-range of the sentencing guidelines, thereby, permitting him to appeal his sentence.

14.   He received ineffective assistance of trial and appellate counsel for failing to object to the bias of the Court.

15.   The cumulative impact of the errors of counsel resulted in a violation of his Sixth Amendment rights.

### III.   Factual Background and Procedural History

#### A.   Facts of the Offense[3]

From May 29 through August 7, 2007, Movant engaged in a scheme to defraud homeowners, financial institutions, and the insurance underwriter. During this time, Movant operated Delta Financial Corporation in Broward County, as well as 1st Guaranty Mortgage and Spectrum Title, Inc. Delta was licensed as a correspondent mortgage lender, 1st Guaranty Mortgage was a fictitious name entity, and Spectrum Title was licensed as a title agency by the State of Florida. Spectrum Title handled real estate closings for lenders and issued title insurance policies under the authority of its underwriter Stewart Title Guaranty. 1st Guaranty Mortgage found borrowers seeking mortgages and refinancing opportunities. Movant, along with his wife Amy, had signatory authority for all operating accounts. Movant and his employees would obtain borrowers, mostly those seeking to refinance loans, and he would obtain financing, handle the closing, and falsely and fraudulently represent in the United States Department of Housing and Urban Development ("HUD") Settlement Statements that the original mortgage was being paid off, together with other expenses.

During the course of the investigation, it was revealed that

---

[3]The facts of this case have been obtained from the stipulated factual proffer which Movant executed and which was stipulated to as accurate during the change of plea proceeding (Cr-DE# 48, Cv-DE# 14-3) and the PSI which summarized the offense conduct in this case. See PSI at ¶¶12-28.

Movant's companies had failed to payoff six original loans after homeowners refinanced. This impacted the homeowner, the financial institution holding the original mortgage, and the title underwriter. Movant's companies would receive the full payoff amount from the refinancing institution, then fail to pay off the original mortgage. Movant would often make some mortgage payments after the refinancing to hold off collection efforts and to hide the failure to pay off the original loan from the homeowner. When homeowners complained after receiving notices of default from the original financial institution, Movant claimed it was clerical error or a mistake. Stewart Title Guaranty ultimately settled the original financial institution claims, paying more than $1.3 million on behalf of Spectrum Title. Many of the homeowners incurred out of pocket expenses when they were forced to retain attorneys to handle the matters and/or when they were required to make double mortgage payments to hold off collection activities.

B. <u>Information, Plea Agreement and Change of Plea Proceedings</u>

On July 10, 2009, Movant entered into a negotiated written plea agreement with the government. <u>See</u> Plea Agreement. (Cr-DE# 23; Cv-DE# 14-1). By executing the agreement, Movant agreed to waive indictment and to plead guilty to an Information to be filed by the government. <u>Id</u>. at ¶1. Specifically, he agreed to enter a plea of guilty to one count of mail fraud in violation of 18 U.S.C. §1341 and one count of making a false statement to HUD in violation of 18 U.S.C. §1001. <u>Id</u>. at ¶¶2, 3. The plea agreement advised Movant that as to the first offense he faced a maximum statutory sentence of up to twenty years' imprisonment, a maximum term of supervised release up to three years, and a fine up to $250,000. <u>Id</u>. As to the second offense, he faced a maximum statutory sentence of up to five years' imprisonment, a maximum term of supervised release up to one year, and a fine up to $250,000. <u>Id</u>. at ¶3. In exchange for the entry of the guilty pleas, the government agreed not to charge Amy Lalonde,

Movant's wife, with regard to the activities of Spectrum Title, Inc. during 2007-2008. Id. at ¶3.b). To receive such a benefit, Amy was required to surrender by the date of Movant's guilty plea any and all State of Florida licenses in her name or in the names of corporations or other entities owned or controlled by her as a licensed mortgage broker, mortgage lender, mortgage broker business, correspondent lender, title agent, and real estate agent. Id. She was also required to agree to a permanent disbarment in the State of Florida to being licensed as a mortgage broker, mortgage lender, mortgage broker business, correspondent lender, title agent, and/or real estate agent. Id.

By executing the agreement, Movant acknowledged that the sentence would be computed based on the advisory sentencing guidelines and that the applicable guidelines would be determined by the Court relying in part on the results of a presentence investigation by the probation officer, which investigation would commence after the guilty plea has been entered. Id. at ¶4. Movant further acknowledged that while the Court was required to consider the advisory guideline range, it was not bound to impose that sentence and could depart upward or downward from the advisory sentencing guideline range. Id. Movant additionally acknowledged that the Court had the authority to impose any sentence within and up to the maximum authorized by law and that he could not withdraw the plea solely as a result of the sentence imposed. Id. The parties agreed to recommend to the Court a sentence within the advisory sentencing guideline range, although that recommendation was not binding on the Court or the probation office. Id. at ¶5. The agreement also provided that the government reserved the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as facts concerning the defendant and the defendant's background.

<u>Id</u>. at ¶7.

The agreement went on to provide as follows:

The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 4 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

<u>Id</u>. at ¶8.

By entering into the agreement, the government agreed to recommend that Movant receive an offense level reduction for acceptance of responsibility and to recommend that Movant be sentenced to the low end of the sentencing guidelines range, as that range was determined by the Court. <u>Id</u>. at ¶9. The government was, however, not required to make such a recommendation if Lalonde: (1) failed or refused to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) misrepresented facts to the government prior to entering into the plea agreement; or (3) committed any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official. <u>Id</u>.

In order to receive the benefits of the plea agreement, Lalonde agreed to (1) cooperate with the Internal Revenue Service

("IRS") in its civil examination, determination, assessment, and collection of income taxes related to him for 2006 through 2008 income tax returns and any related corporate/entity tax returns, and also agreed not to conceal, transfer, or dissipate funds or property that could be used to satisfy such taxes, penalties, and interest; (2) provide the IRS any documentation in his possession and/or control requested by the IRS in connection with its civil examination, determination, assessment, and collection of such income taxes prior to sentencing tax years 2006 through 2008; (3) prepare and file accurate amended individual and corporate/entity income tax returns for the tax years 2006 through 2008; and (4) pay all taxes, interest, and penalties due and owing to the IRS, including all taxes, interest, and penalties on him individual and any related corporate/entity liabilities for the tax years 2006 through 2008. Id. at ¶10. The agreement provided that nothing in the agreement limited the IRS in its civil determination, assessment, and collection of any taxes, interest, and/or penalties that Lalonde might have owed. Id. The agreement additionally provided that any statements made by Lalonde to the IRS and/or in subject agreement was admissible against him in any civil proceeding only and he stipulated to the authenticity and admissibility, in any civil proceeding, of any documentation provided to the IRS. Id. at ¶11.

The plea agreement also contained an appeal waiver whereby movant agreed that, in exchange for the government's recommendation to the Court with regard to the sentence to be imposed, he would waive his right to a direct appeal from his sentence, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure and/or a variance from the guidelines range. Id. at ¶12. The movant stated that he had discussed the appeal waiver with his attorney before entering into the plea agreement. Id. Movant further agreed, together with the government,

to request that the Court enter a specific finding that the waiver of the right to appeal the sentence to be imposed in this case was knowing and voluntary. Id. Finally, the agreement provided that the written plea agreement constituted the entire agreement and understanding between the United States and movant and that there were no other agreements, promises, representations or understandings. Id. at ¶13.

Days after he executed the written plea agreement, the government filed on July 13, 2009, an Information, charging Movant with the offenses of mail fraud, in violation of 18 U.S.C. §§1341 and 2, and making a false statement to the U.S. Department of Housing and Urban Development (HUD), in violation of 18 U.S.C. §§1001 and 2. (Cr-DE# 1). Two days later, on July 15, 2009, Movant waived prosecution by Indictment and consented to prosecution by Information. (Cr-DE# 3). Approximately two months after that, he executed a factual proffer in which he agreed that if the case had proceeded to trial, the government would have proved beyond a reasonable doubt the facts as set forth in the proffer. See Parties' Stipulated Factual Proffer. (Cr-DE# 24; Cv-DE# 14-2). Just a few days later, Movant appeared before this Court for change of plea proceedings and the  Court conducted a careful and meticulous plea colloquy pursuant to Fed.R.Crim.P. 11 during which Movant was sworn. See Transcript of Change of Plea Hearing conducted on September 21, 2009. (Cr-DE# 48; Cv-DE# 14-3). The Court first obtained personal background information from Movant. Id. at 3-4. Movant informed the Court that he was forty-two years old and had attended college for one year.  Id. at 3. The Court next asked Movant if he had received a copy of the Information and whether he had fully discussed the charges and case with trial counsel. Id. He answered, "Yes," to both questions and told the Court that he was satisfied with the representation given to him by counsel. Id. When asked if he understood the two charges against him, Movant

responded affirmatively. Id. at 4-5.

Movant was next advised of the maximum possible penalties that could be imposed which was twenty years' imprisonment as to the mail fraud charge to be followed by up to a three-year term of supervised release and, as to the false statement charge, a term of imprisonment up to five years to be followed by up to one year of supervised release. Id. at 5. Movant indicated that he understood all possible penalties in this case if he entered pleas of guilty to the charges and also told the Court that he had no questions regarding the possible penalties that could be imposed. Id. At the Court's request, the government then set forth all the elements of the crimes to which Movant was entering his guilty pleas after which the Court asked trial counsel what steps he had taken to familiarize Movant with the elements and the charges pending against him. Id. at 5-6. Counsel answered that he had discussed the charges and their elements with Movant and Movant confirmed counsel's statement to the Court. Id. at 6-7.

Regarding the sentencing guidelines, the following colloquy was conducted with Movant:

> THE COURT:      And have you and [trial counsel] Mr. Udolf also discussed how the federal sentencing guidelines might apply to your case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:      Do you understand that the Court is required to compute an advisory sentence under the federal sentencing guidelines?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:      Do you understand that the advisory sentence will be determined by the Court relying in part on a presentence investigation which is conducted by the U.S. Probation Office?
>
> THE DEFENDANT:  Yes.

```
THE COURT:        Do  you  understand  that under certain
                  circumstances, the Court may depart from the
                  advisory guideline range and may either raise
                  or lower the advisory sentence?

THE DEFENDANT:  Yes.

THE COURT:        Do you understand that the Court is required
                  to consider the advisory guideline range but
                  is not bound to impose a sentence within that
                  range?

THE DEFENDANT:  Yes.

THE COURT:        Do you understand the Court's sentence may
                  be either more severe or less severe than the
                  sentencing guidelines advisory range?

THE DEFENDANT:  Yes.

THE COURT:        Do you understand that the Court does have
                  the authority to impose any sentence up to
                  the statutory maximum authorized by law?

THE DEFENDANT:  Yes.
```

Id. at 7-8. The Court also asked Movant if he understood that if he was not a United States citizen that the plea might result in deportation.[4] Id. at 8. Movant unequivocally responded, "Yes." Id.

The Court went on to ask Movant if he had in fact signed the written plea agreement, if he had read the written plea agreement before signing it, if he had fully discussed with trial counsel the terms and conditions of the plea agreement, and if he understood the terms of the plea agreement. Id. at 8-9. Movant answered in the affirmative to all these questions. Id.  Movant denied that anyone had forced or coerced him in any way to get him to execute the written plea agreement or enter the guilty pleas. Id. at 9. He told the Court that he was entering the guilty pleas of his own free

_____

[4]Movant is a citizen of Canada and is a legal permanent resident of the United States. See PSI at ¶63. According to United States Immigration and Customs Enforcement (ICE), since MOvant has been convicted of an aggravated felony, he might be subject to removal proceedings for violations of the Immigration Act. Id.

will. Id. With regard to the appeal waiver provision contained in paragraph 12 of the plea agreement, the trial court reviewed with Movant the pertinent language contained in that paragraph and Movant indicated that he understood the appellate waiver. Id. at 9-10. Movant further told the Court that he had fully discussed the appeal waiver with counsel and that he had no questions regarding the legal effect of the appellate waiver. Id. at 10. When asked whether he still desired to enter guilty pleas to the crimes charged, although the negotiated plea agreement contained an appellate waiver, Movant stated that he did. Id. The Court then expressly found that Movant had knowingly, intelligently and voluntarily waived his right to appeal his sentence in accordance with the plea agreement. Id.

During the colloquy, Movant was fully advised that he had a right to proceed to trial before a jury and that by entering the guilty plea he was waiving all his constitution rights associated with a jury trial, such as the right to confront witnesses against him, the right to challenge the government's evidence, the right to testify in his own behalf, and the right to call witnesses in his defense. Id. at 11-12. Movant repeatedly stated that he understood his various constitutional rights and that he agreed to waive those rights. Id. Movant was also asked if he had read the stipulated factual proffer and if he agreed that the facts contained in the proffer were true and correct, and he answered both questions: "Yes." Id. at 12. After Movant told the Court that he had signed the Parties' Stipulated Factual Proffer, the Court incorporated by reference the proffer and it was made part of the plea colloquy. Id.

Before accepting the guilty pleas, the Court asked trial counsel whether he was satisfied that Movant understood all his constitutional rights that he was waiving by entering the guilty

pleas whether there was a sufficient factual basis for the pleas, and counsel answered, "Yes, sir." Id. at 13. After Movant assured the Court that he had no questions for the Court, the Court asked Movant how he pled to each count of the Information. Id. Movant answered, "Guilty." Id. The Court then accepted the change of plea, expressly finding that Movant was fully competent and capable of entering an informed plea, that Movant was aware of the nature of the charge and the consequences of the plea, and that the knowing and voluntary plea was supported by an independent basis in fact containing each of the essential elements of the offense. Id. at 13. The Court next advised Movant that a Presentence Investigation Report was to be prepared before sentencing to assist the Court in sentencing, that he would be asked to provide information to the Probation Officer, that he and counsel would be given a copy of the report to read, and that he would be entitled to file any appropriate objections to the report before the sentence proceeding. Id. at 14. He was also told that he would be given an opportunity to address the Court with respect to the sentence to be imposed. Id. Finally, before concluding the proceeding, the Court asked if there were any other issues or matters that needed to be addressed at that time. Id. at 15. Counsel for the government and movant both answered in the negative and Movant remained silent. Id.

C. Presentence Investigation Report and Sentence Proceedings

The PSI extensively detailed the pertinent facts of the case and Movant's role in the offense conduct. See Presentence Investigation Report at ¶¶11-28. The probation officer determined that the offense in this case involving fraud had a base offense level of seven pursuant to U.S.S.G. §2B1.1(a)(1) in that it had a statutory maximum term of imprisonment of twenty years or more. Id. at ¶36. Because the loss amount was greater than $1,000,000, but less than $2,500,000, the offense level was increased by 16 levels

pursuant to U.S.S.G. §2B1.1(b)(1)(I) and increased by another two levels pursuant to U.S.S.G. §2B1.1(b)(14)(A) since Movant derived more than $1,000,000 in gross receipts for or more financial institutions as a result of the offense. Id. at ¶38. With an additional two-level increase pursuant to U.S.S.G. §3B1.3 based upon Movant's abuse of a position of public or private trust in a manner that facilitated the commission or concealment of the offense, Movant had an adjusted base offense level of 27. Id. at ¶¶40-42. With no other enhancements and no adjustment for acceptance of responsibility since Movant had not provided a statement wherein he admitted his conduct, the total offense level was 27. Id. at ¶¶43-45.

Movant had zero criminal history points and a criminal history category of I. Id. at ¶49. Based on a total offense level of 27 and a criminal history category of I, the resulting guideline range was 70 to 87 months in prison. Id. at ¶100. The total statutory term of imprisonment as to Count One was zero to twenty years and, as to Count Two, the term was zero to five years. Id. at ¶99. A term of supervised release of no more than three years was required by the applicable statute and sentencing guidelines provision. Id. at ¶¶101, 102. Regarding the fines to be imposed, the statutes provided that, as to Count One, the maximum fine was $523,749 and, as to Count Two, the maximum fine was $250,000. Id. at ¶105. The sentencing guidelines provided a fine range from $12,500 to $125,000. Id. at ¶106. Both the applicable statutes and sentencing guidelines required an order of restitution with the statutes specifying a total amount of restitution of $1,897,268.05. Id. at ¶¶107, 108.

The Movant filed several objections to the PSI. See Objections to the Presentence Investigation Report. (Cr-DE# 31). See also Addenda to the Presentence Report. Sentence proceedings took place

on December 18, 2009. <u>See</u> Transcript of Sentencing Hearing. (Cr-DE# 49; Cv-DE# 14-6). At the outset of the proceedings, the parties indicated to the Court that they jointly objected to the Probation Officer's finding that the base offense level should be increased by two-levels due to the finding of $1,000,000 in gross receipts. <u>Id</u>. at 3. The Court sustained the joint objection. <u>Id</u>. After not reducing the base offense level for acceptance of responsibility, the total base offense level was 25. <u>Id</u>. at 14. With a base offense level of 25 and a criminal history category of I, the advisory imprisonment range was 57 to 71 months. <u>Id</u>. The Court sentenced Movant to a term of imprisonment of 60 months followed by a three-year term of supervised release. <u>Id</u>. at 16-19. Restitution in the amount of $1,897,268.05 was ordered. <u>Id</u>. at 17. The Court then advised Movant of his right to a direct appeal. <u>Id</u>.

## D. <u>Direct Appeal and §2255 Motion</u>

Movant timely filed a <u>pro</u> <u>se</u> notice of appeal after which trial counsel was permitted to withdraw from the case and the Federal Public Defender was appointed to represent him on appeal. (Cr-DE# 36, 45). The sole issue raised on direct appeal was that this Court erred in denying Lalonde a two-point reduction in his offense level for acceptance of responsibility. <u>See</u> Brief of the Appellant Stephen Lalonde. (Cv-DE# 14-5). After Lalonde's brief had been filed, the government filed a motion to dismiss the appeal pursuant to the appeal waiver. <u>See</u> <u>United States v. Lalonde</u>, No. 10-10071. By order entered on May 25, 2010, the Eleventh Circuit Court of Appeals ruled: "Appellee's motion to dismiss this appeal due to a valid appeal waiver contained in Appellant's plea agreement is GRANTED." <u>United States v. Lalonde</u>, No. 10-10071-EE (11th Cir. May 25, 2010). <u>See also</u> Cr-DE# 52; Cv-DE# 14-4. Movant did not file a petition for writ of certiorari before the United

States Supreme Court. On May 27, 2011,[5] Movant filed the instant pro se motion to vacate pursuant to 28 U.S.C. §2255.[6]

## IV. Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), cert. denied, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Id. (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of

---

[5]This Court applies the "mailbox rule" and deems the motion to vacate filed on the date it was delivered to prison authorities for mailing. See Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). See also Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[6]The Eleventh Circuit dismissed Movant's direct appeal on May 25, 2010. Since Movant did not seek certiorari review of that dismissal, his judgment became final on August 23, 2010. He had one year from that date to seek habeas relief. See 28 U.S.C. §2255(f)(1); see also Stewart v. United States, 646 F.3d 856, 857 (11th Cir. 2011). The government appropriately does not challenge the timeliness of the instant motion to vacate.

relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Id. at 1232-33 (quoting Richards v. United States, 83 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

V. General Legal Principles

A. Guilty Plea

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea.

Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). See also United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the

accused person by the court, prosecutor, or his own counsel. Mabry, 467 U.S. at 509, *quoting*, Brady v. United States, 397 U.S. at 748. If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. Mabry, 467 U.S. at 509. See also Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

## B. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. "Surmounting *Strickland's* high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). If the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs).

This two-part standard is also applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Generally, as indicated, a court first determines whether counsel's performance fell below an objective

standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Padilla</u>, 130 S.Ct. at 1482. In the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. <u>Hill</u>, 474 U.S. at 56-59. See also <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, ___ L.Ed.2d ___, 2012 WL 932019 (March 21, 2012); <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399, ___ L.Ed.2d ___, 2012 WL 932020 (March 21, 2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 104 S.Ct. at 2052.

The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 130 S.Ct. at 1485 (*citing* <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." <u>Meyer v. Branker</u>, 506 F.3d 358, 369 (4th Cir. 2007), *cert. denied*, 554 U.S. 925, 128 S.Ct. 2975, 171 L.Ed.2d 899 (2008)(*quoting* <u>Hill</u>, 474 U.S. at 59-60). In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136(1977).

Since the sentence ultimately imposed upon the defendant is a "result of the proceeding," in order for a petitioner to satisfy

the prejudice-prong of *Strickland*, he must demonstrate that there is a reasonable probability that the conditions of his guilty plea or his sentence would have been different but for his trial counsel's errors. See United States v. Boone, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim that counsel was ineffective in part because the defendant failed to show "that the resulting sentence would have been different than that imposed under the Sentencing Guidelines"), cert. denied, 516 U.S. 1014 (1995). Thus, the *Strickland* test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. See Glover v. United States, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). If the petitioner cannot meet one of *Strickland*'s prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

The two-prong *Strickland* test is equally applicable in assessing counsel's performance in appellate proceedings. Smith v. Robbins, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)(*Strickland* standard applies to claims alleging ineffective assistance of appellate counsel); Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997)(applying the *Strickland* test to a claim of ineffective assistance of appellate counsel). The Supreme Court has held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy

measure of deference to counsel's judgments." <u>Eagle v. Linahan</u>, 279 F.3d 926, 940 (11th Cir. 2001), <u>quoting</u>, <u>Strickland</u>, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. <u>Eagle</u>, 279 F.3d at 943. <u>See also</u> <u>Digsby v. McNeil</u>, 627 F.3d 823, 831 (11th Cir. 2010)(holding that to determine whether the petitioner's appellate counsel rendered ineffective assistance, the court must assess the strength of the claim that the petitioner asserts his appellate counsel should have raised in his state direct appeal and only if failure to bring the claim both rendered counsel's performance deficient and resulted in prejudice to the petitioner was there ineffective assistance).

## VI. <u>Discussion</u>

Although Movant has raised at least fifteen separate grounds for relief, if not more, he is in actuality attacking his convictions and sentences on the following five general grounds: (1) his guilty pleas were involuntarily entered and he received ineffective assistance of counsel in connection with the entry of his guilty plea; (2) the government breached the terms of the plea agreement and he was denied a direct appeal because of it; (3) the sentence proceeding was unlawful and his sentence is unlawful; (4) he received ineffective assistance of counsel with regard to the sentence imposed; and (5) he received ineffective assistance of appellate counsel with regard to his direct appeal.[7] He also maintains that the cumulative impact of the errors of counsel

---

[7]Because the claims will be grouped for discussion, they will not necessarily be addressed in the order presented by the Movant in his motion to vacate or set out herein in the Claims section of this Report.

resulted in a violation of his Sixth Amendment rights. Movant was represented by retained counsel Bruce L. Udolf at least by the time the plea agreement was entered in this case and he represented Movant through sentencing. Movant was represented by Assistant Federal Public Defender Robin J. Farnsworth for the direct appeal.

A. Lawfulness of Guilty Pleas and Ineffective Assistance of Counsel Regarding Entry of the Guilty Pleas

Movant challenges his conviction on the basis that his convictions were obtained by pleas of guilty which were unlawfully induced or not made voluntarily in that the plea was based upon ineffective assistance of trial counsel and/or prosecutorial misconduct. Specifically, he alleges that his pleas of guilty were involuntarily entered, because they were based upon (a) material misrepresentations made by the government and trial counsel that he would receive a sentence of 16 months based upon his cooperation with the government, (b) threats regarding otherwise indicting his wife, (c) counsel's conflict of interest, (d) his inability to pay counsel's fee if he proceeded to trial, and (e) counsel's assurances that he would not be deported.

Review of the record as set forth above indicates that the entry of the guilty pleas was lawful. During the change of plea proceeding, Movant was fully advised of the consequences of the guilty pleas. It was discussed in open court during the change of plea hearing that the Court could not at that time tell Movant the actual sentence he would receive. He was advised that it could be higher or lower than the advisory guidelines range, and that the range was not known at that time and would not be known until the time of sentencing after a PSI had been prepared. The Court further advised Movant that many factors were to be considered when determining the appropriate sentence and that he faced a possible maximum statutory term of imprisonment of twenty years as to the mail fraud charge and a maximum term of five years' imprisonment as

23

to the false statement charge. Movant told the Court that he was aware of all the sentencing implications of his guilty pleas. Never at any time during the change of plea proceeding did either counsel for the movant or government or the movant himself inform the Court that he had been promised any particular sentence. While the terms of the plea agreement provided that the government agreed to recommend at sentencing that Movant receive an offense level reduction for acceptance of responsibility, the agreement expressly provided that the government was not required to make such a recommendation if *inter alia* Movant committed any misconduct after entering into the plea agreement. The Court found during sentencing that such misconduct had been committed, thereby, releasing the government from its obligation under the plea agreement.

Further, the record as set out above clearly indicates that the Court conducted a thorough plea colloquy pursuant to Supreme Court precedent and Rule 11. The pleas of guilty are lawful in that they were entered knowingly, voluntarily and freely with the benefit of competent counsel, as required by applicable constitutional principles. All of the matters about which Movant claims his attorney misadvised him and/or the government misled him were explained to him at the change of plea proceeding. He raised no questions and, in each instance, stated or agreed that he understood what was happening. He also told the Court that he was satisfied with the advice and representation received from counsel.

Thus, Movant's attack upon the lawfulness of his guilty pleas in this collateral proceeding is belied by the record. Movant's representations during the plea proceeding, as well as those of his lawyer and the prosecutor, and the findings by this Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). See also United

States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements."). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness in open court. DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994). See also United States v. Anderson, 384 F.Appx. 863, 865 (11th Cir. 2010)("There is a strong presumption that statements made during a plea colloquy are true.")(unpublished); United States v. Munguia-Ramirez, 267 Fed.Appx. 894, 897 (11th Cir. 2008)(stating that when a movant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true")(citations omitted)(unpublished).

More specifically, as to the joint representation claim, it is beyond dispute that the right to effective assistance includes the right to representation free from conflicts of interest. Cuyler v. Sullivan, 446 U.S. 335, 348-50, 100 S.Ct. 1708 (1980), accord Mickens v. Taylor, 535 U.S. 162 (2002). In order to establish ineffective assistance of counsel in a conflict of interest situation, a defendant who did not raise an objection at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348. See also United States v. Novaton, 271 F.3d 968 (11th Cir. 2001); Freund v. Butterworth, 165 F.3d 839, 859-60 (11th Cir. 1999)(holding that to prove that an "actual conflict" hindered lawyer's performance, defendant must make factual showing of

inconsistent interests or point to specific instances in record to suggest an actual impairment of his interests). If a defendant proceeds under *Cuyler* by demonstrating an actual conflict of interest, prejudice is presumed. <u>Strickland</u>, 466 U.S. at 692, 104 S.Ct. at 2067. A conflict of interest arises "when the defense attorney ... [is] required to make a choice advancing his own interests to the detriment of his client's interests." <u>United States v. Horton</u>, 845 F.2d 1414, 1419 (7th Cir. 1988).

Joint representation of conflicting interests is inherently suspect, because counsel's conflicting obligations to multiple defendants "effectively sea[ls] his lips on crucial matters" and make it difficult to measure the precise harm arising from counsel's errors. <u>Holloway v. Arkansas</u>, 435 U.S. 475, 489-90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). However, "[a]lthough joint representation of multiple criminal defendants creates a danger of counsel conflict of interest, the 'mere fact of joint representation will certainly not show an actual conflict.'" <u>United States v. Mers</u>, 701 F.2d 1321, 1326 (11th Cir. 1983) (*quoting* <u>United States v. Medel</u>, 592 F.2d 1305, 1310 (5th Cir. 1979)). Further, even if a petitioner can demonstrate an actual conflict, such conflict does not amount to a Sixth Amendment violation unless it adversely affected the lawyer's performance. <u>See</u> <u>Smith v. White</u>, 815 F.2d 1401, 1404 (11th Cir. 1987).

It is first pointed out that while Amy was in fact a "target" of a federal grand jury investigation,[8] there is no indication

_____

[8]Movant has provided a copy of a letter dated February 24, 2009, from AUSA Kay to Amy Lalonde, stating in pertinent part:

Pursuant to U.S. Department of Justice policy this letter is to advise you of your status as a "target" of a federal grand jury investigation in this district.

This investigation is being conducted by various federal and state investigative agencies with the U.S. Attorneys Office for violations of Title 18, United States Code, Section 371-conspiracy, Title 18 United States

whatever in the record that trial counsel had represented Amy in any respect with regard to the subject criminal proceeding.[9] Consequently, the conflict of interest claim is wholly conclusory with no substantiation in the record other than Movant's self-serving statements.[10] Additionally, since the plea was entered knowingly and voluntarily as indicated by the above review of the change of plea proceedings, this claim is waived. As stated above, once a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring before the guilty plea was entered except under limited circumstances. See United States v. Broce, 488 U.S. at 574-75; Tollett v. Henderson, 411 U.S. at 267. See also United States v.

---

Code 1341-Mail Fraud, Title 18, United States Code-Wire Fraud and Title 18, United States Code, Section 1001, and RESPA.

At the present time we are in the pre-indictment phase of this investigation. Should you and your lawyer wish to contact me for a meeting or proffer please have him contact me at (954)-356-7225, ext 3593.

Should you not be able to afford an attorney please let this office know and we can set up an appearance for you before a U.S. Magistrate Judge at the Federal Courthouse in Fort Lauderdale for the court to determine if you are eligible for court appointed counsel.

(Letter from ASUA Kay to Amy Lalonde dated February 24, 2009)(Exhibit 2 to Cv-DE# 20). Movant has also provided a copy of an email sent from attorney Bruce Lyons which stated in relevant part:

Received a call from Jeff Kay telling me that we are excused from the Grand jury for Thursday since he has a conflict before a judge on a resentencing. He asked me whether the client was prepared to produce that which was requested. I told him I have had no contact with the client so I don't know. *He then asked whether I knew whether my clients' wife had an attorney and I again told him I had no such knowledge.* He said that the government has spoken to one of the employees who at this point has lawyered up which may be causing the problems.

(emphasis added)(Email from Bruce Lyons dated March 17, 2009)(Exhibit 1 to Cv-DE# 20).

[9]For example, Movant has not submitted an affidavit from Amy Lalonde and/or trial counsel indicating that there had been an ongoing attorney-client relationship at the same time that trial counsel was representing Movant.

[10]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)); Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

_Patti_, 337 F.3d at 1320; _Wilson v. United States_, 962 F.2d at 997; _United States v. Fairchild_, 803 F.2d at 1123.

The effectiveness of counsel regarding dual representation and representation pertaining to the charging document and any defenses to the crimes charged do not relate to the voluntariness of the plea.[11] _See_ _Tiemens v. United States_, 724 F.2d 928, 929 (11th Cir.)(stating that "a guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process"), _cert. denied_, 469 U.S. 837 (1984). _See_ _United States v. Coil_, 442 F.3d 912, 914-15 (5th Cir. 2006); _Denton v. United States_, 465 F.2d 1394, 1395 (5th Cir. 1972)(holding that challenge to criminal complaint and arrest warrant were waived by plea of guilty, knowingly and voluntarily entered);[12] _United States v. Harbolt_, 426 F.2d 1346, 1347 (5th Cir. 1970)(_quoting_ _Martin v. United States_, 256 F.2d 345, _cert. denied_ 358 U.S. 921, 79 S.Ct. 294, 3 L.Ed.2d 240 (1958)(holding that since "'the guilty plea was voluntary the [movant] must be said to have waived the conflict of interest theory.'"); _United States v. Arnaiz_, 144 Fed.Appx. 27, 31 (11th Cir. 2005)(holding that defendant waived any non-jurisdictional challenges to his indictment, including by way of a motion to dismiss the indictment, when he voluntarily pleaded guilty with the advice of competent counsel)(unpublished).

---

[11]Lalonde also claims that trial counsel improperly withheld information regarding persons who were responsible for committing the offense and improperly failed to challenge the charges brought against him in that HUD was not involved. Movant is apparently attempting to raise jurisdictional challenges to his and, if so, such an argument is clearly meritless. _See_ Government's Response to Motion to Vacate at 14-16. (Cv-DE# 14).

[12]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. _Bonner v. City of Prichard_, 661 F.2d 1206, 1207 (11th Cir. 1981).

Moreover, as indicated above, Movant assured the Court during the change of plea proceeding that he was fully satisfied with the representation and advice given to him by counsel in the case which necessarily included counsel's representation during the pre-plea stage of the case and any challenges to the crimes charged. He also executed a factual proffer and advised the Court that the proffer was accurate and unequivocally admitted that he was in fact guilty of the offenses detailed in the proffer. Again, such sworn statements made in connection with the entry of the guilty plea carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See e.g., Blackledge, 431 U.S. at 74.

Even if trial counsel had simultaneously represented Movant and his wife and the conflict of interest claim had not been waived by the guilty plea, there is no evidence that an actual conflict arose with regard to the entry of the guilty pleas and/or sentencing or that the alleged conflict adversely affected counsel's performance. Negotiating with the government to obtain a reduced sentence for Movant based on Movant's acceptance of responsibility and/or cooperation was clearly unrelated to Movant's wife's circumstances. While the plea agreement did provide that the government would not prosecute Movant's wife if she agreed to surrender various licenses, it also provided Movant with various benefits if he entered guilty pleas. See Plea Agreement at ¶¶5, 9. As such, while Movant's entry into the plea agreement may have, at least in part, been motivated by the government's promise not to pursue an Indictment against Amy, it cannot be said that such a promise amounted to undue pressure, coercion or threat to obtain entry into the plea agreement which could have possibly rendered

the guilty pleas involuntarily entered.[13] And, during sentencing, which will be indicated more extensively below, trial counsel did all that he could to obtain the lowest possible sentence for Movant. It also cannot be overlooked, as pointed out by the government, Movant does not assert in this §2255 proceeding that he would have proceeded to trial, but for counsel's errors, instead of pleading guilty, but merely seeks a resentencing, hoping to obtain a more favorable sentence. See Motion to Vacate at 14. (Cv-DE# 1). Thus, the record fails to demonstrate an actual conflict of interest which adversely affected his counsel's performance. Accordingly, the claim is meritless. See United States v. Sims, 143 Fed.Appx. 210, 215-217 (11th Cir. 2005)(unpublished).

Movant also maintains that his guilty plea was involuntary entered, because it was based upon the misunderstanding that if he could no longer pay his counsel the demanded fee, he could not proceed to trial. This allegation is clearly refuted by the record. During the change of plea proceeding, the Court conducted the following colloquy:

THE COURT:    Now, Mr. Lalonde, do you understand that you

---

[13]It is also important to note that a threat to charge a person for whom law enforcement authorities have probable cause to prosecute does not, in and of itself, render a defendant's guilty plea invalid as being improperly coerced. Newland v. Hall, 527 F.3d 1162, 1189 (11th Cir. 2008); Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001)(holding there was no police coercion when police officer told accused that his girlfriend would be charged for murder unless he confessed, because officer had probable cause to arrest girlfriend for murder); Martin v. Kemp, 760 F.2d 1244, 1247-48 (11th Cir. 1985)(affirming the "governing legal principle" that where a defendant claims that his guilty plea is involuntary because prompted by police threats to prosecute a third party, the defendant bears the "heavy burden" of showing that at the time the threats were made, the police did not have probable cause to believe that the third party had "committed a crime."). Movant does not contend that the government lacked probable cause to prosecute his wife and, even if he did, the record would not support such an assertion. Amy Lalonde was an officer and president of the targeted companies and had full signatory authority on the financial accounts. Accordingly, the government would have probable cause to have pursued criminal charges against her. Movant has not demonstrated that his guilty pleas were coerced.

have the right to plead not guilty to each
offense charged and to persist in that plea
of not guilty?

THE DEFENDANT:   Yes.

THE COURT:   Do you understand you have the right to a
trial by jury?

THE DEFENDANT:   Yes.

THE COURT:   Do you understand at that trial, you would be
presumed innocent and the government would
have the burden of   proving through the
production of evidence your guilt beyond a
reasonable doubt, as to each offense charged?

THE DEFENDANT:   Yes.

THE COURT:   Do you understand that you have the right to
the assistance of counsel at that trial and
*if you could not afford counsel, this Court
would appoint counsel to represent you?*

THE DEFENDANT:   Yes.

(emphasis added)(Transcript of Change of Plea Hearing conducted on
September 21, 2009, at 11). Movant's related allegation that
counsel threatened not to represent him as promised (i.e., not
obtain a reduced sentence) if he failed to pay an additional sum of
money to counsel is wholly conclusory with no substantiation
whatever in the record. Further, the claim is frivolous. As
indicated above, and to be discussed below, Movant was not entitled
to a reduction in the base offense level for substantial assistance
based upon his own improper actions. In addition, any claim that
trial counsel acted improperly in some way with regard to the
attorney's fee and/or counsel did not properly represent Movant
because of Movant's failure to pay counsel's fee is again without
any support in the record and requires no discussion.[14]

_____

[14]It is noted that a hearing was conducted on January 11, 2010, on
Lalonde's Pro Se Motion for Leave to Appeal In Forma Pauperis (Cr-DE# 37) and Pro
Se Motion to Appoint Counsel (Cr-DE# 38). See Cr-DE# 44. During the hearing,
testimony was received, the financial circumstances of Lalonde was considered,
and the fee arrangement between Lalonde and his retained trial counsel was
reviewed. Id. From the evidence presented, the Honorable Barry S. Seltzer, United

Finally, Movant asserts that counsel misadvised him that he would not be deported as a consequence of his guilty plea. Movant alleges that when he learned during the change of plea proceeding that counsel's advice was inaccurate, he told counsel that he wanted to withdraw his plea. Counsel, however, refused to do so and, instead, assured him that any deportation proceeding could be stopped based upon his cooperation with the government. Movant states that if he had known he would be deported as a consequence of his guilty plea, he would not have entered the pleas in that he has strong family and business ties to the United States which he did not have with his country of origin, Canada.

If Movant is raising a claim based upon <u>Padilla v. Kentucky</u>, ____ U.S. ____, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)[15] then his claim must fail, as meritless. Even if it is true that counsel did not advise Movant that his guilty plea subjected him to removal, he was clearly so advised by the Court during the change of plea proceeding and with that knowledge, he persisted with the entry of his guilty plea. From full review of Movant's pleadings, it appears that his real claim is that subsequent to the  change of plea proceeding, trial counsel affirmatively misadvised him that he would not suffer such a consequence since he was cooperating with the government. While an attorney's affirmative misrepresentation

---

States Magistrate Judge, found *inter alia* that (1) Lalonde had paid to trial counsel a fee of $60,000 and counsel wrote-off the unpaid balance due; (2) trial counsel expended at least 150 hours in researching issues of law, reviewing discovery, meeting with Lalonde, drafting motions, attending court proceedings, and otherwise preparing the case; and (3) trial counsel's fee, in combination with the hours expended, resulted in an effective rate far below his usual hourly rate. <u>Id</u>. Based on these findings, Magistrate Judge Seltzer concluded that the fee arrangement between Lalonde and retained counsel was reasonable in light of the nature and complexity of the charges and the extent of counsel's research, investigation, preparation, and court appearances. <u>Id</u>.

[15]Under *Padilla*, an attorney's failure to advise a client that a guilty plea carries the risk of deportation constitutes deficient performance under the first prong of *Strickland*.

regarding the immigration consequences of a guilty plea might under
certain circumstances arise to ineffective assistance under
*Strickland*, see Downs-Morgan v. United States, 765 F.2d 1534,
1540-41 (11th Cir. 1985)(distinguishing an attorney's failure to
advise his client regarding a collateral consequence of his plea
from an affirmative misrepresentation, concluding that whether
counsel was ineffective based on a misrepresentation should be
determined based on the totality of the circumstances), such is not
the case here.

Movant has failed to show that rejection of the plea bargain
would have been rational under the circumstances. See Padilla, 130
S.Ct. at 1485. Contrary to his sworn statements made during the
change of plea proceeding and factual proffer, Movant now appears
to maintain that he is factually innocent of one or both crimes
charged. The record in no way supports such an assertion despite
the Declaration of Michael Ammundsen executed on May 25, 2011,
filed in this post-conviction proceeding. (Cv-DE# 1-3). The
evidence against Movant was overwhelming and he was not likely to
have prevailed at trial. Moreover, Movant's plea agreement offered
him significant benefits in return for his guilty plea. As noted,
the plea agreement provided for a sentence within the advisory
guideline range without the possibility of an upward departure,
recommended a three-level reduction for acceptance of
responsibility, and a further recommendation for a sentence at the
low-end of the advisory guideline range. The fact that Movant did
not receive all the benefits contained in the plea agreement due to
his non-compliance with its terms does not change the conclusion
that entry of the guilty plea was certainly in Movant's best
interest.

Movant has also failed to demonstrate that counsel's
performance was constitutionally ineffective pursuant to *Strickland*

with regard to the entry of the guilty pleas. Trial counsel in no way promised or guaranteed a particular sentence, although he may have erroneously indicated a lesser sentence based upon acceptance of responsibility and/or cooperation with the government. An erroneous estimation of the guidelines does not entitle Movant to relief in that "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981).

At the time that Movant executed the plea agreement and again during the colloquy with the Court, he was aware of the possible penalties in this case, which clearly exceeded the sentence imposed. Movant, therefore, has failed to show that counsel was ineffective for any incorrect estimation of the sentence or that his guilty plea had been unknowing or involuntarily entered. See United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). See also Cruz v. United States, 188 Fed.Appx. 908, 914 (11th Cir. 2006)(finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, inter alia, "[t]he court ... explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else.")(unpublished); United States v. Miley, 119 Fed.Appx. 330, 332 (2d Cir. 2005)(holding that any prejudice from defense counsel's alleged misrepresentations as to what movant's sentence would be was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement)(unpublished); United States v. Macon, 91 Fed.Appx. 239, 243 (3d Cir. 2004)("[W]e have long held that an erroneous sentencing prediction by counsel does not

constitute ineffective assistance of counsel where an adequate plea hearing was conducted.")(unpublished); United States v. Smith, 371 Fed.Appx. 901, 905 (10th Cir. 2010)("miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel")(citations omitted)(unpublished).

Further, a defendant's reliance on his attorney's erroneous prediction of a more lenient sentence is not sufficient to render a guilty plea involuntary. See United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant who received an enhanced sentence as a career offender that his plea was not knowing and voluntary because court advised him that he faced a statutory maximum of life and despite counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); United States v. Harmon, 139 F.3d 899 (5th Cir. 1998)(finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"); United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987). As the Fifth Circuit aptly explained in Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

Daniel, 283 F.3d at 703.

### B. Breach of Plea Agreement

Movant alleges that the government breached the terms of the written plea agreement when it objected to a reduction in the base

offense level for acceptance of responsibility, when it recommended a sentence in the mid-range of his sentencing guidelines, and when it failed to reduce his sentence based upon his ongoing and extensive cooperation. Movant also alleges that based upon the government's breach of the plea agreement, he was improperly denied his right to a direct appeal when the appeal waiver was upheld by the appellate court.

It is beyond dispute that a plea agreement is a contract that must be honored by the government. See Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). The Supreme Court stated in *Santobello*, that "when a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.  "When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." Id. at 268 (Marshall, J. concurring in part and dissenting in part). Accordingly, "the government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996); United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994).

In determining whether the terms of a plea agreement have been violated, the Court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement at the time that the defendant entered his plea. United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992); United States v. Valencia, 985 F.2d 758, 760-61 (5th Cir. 1993). The government's argument at sentencing may breach the promises contained in a plea agreement when the government's statements regarding the PSI are inconsistent with the plea agreement or when the government advocates a sentence greater than indicated in the

plea agreement. See Taylor, 77 F.3d at 370 ("Advocacy of a position requiring a greater sentence is flatly inconsistent with recommendation of a lesser sentence."); Boatner, 966 F.2d at 1578-79. See also United States v. Rewis, 969 F.2d 985, 987-88 (11th Cir. 1992)(holding that the prosecutor's arguments suggesting a harsh sentence breached the government's promise in the plea agreement "not to recommend what sentence should be imposed"). The defendant has the burden of proving facts showing a breach of a plea agreement, and he must make that showing by a preponderance of the evidence. See United States v. Garcia-Bonilla, 11 F.3d 45, 46 (5th Cir. 1993). If, after construing the agreement, the court finds that the movant has satisfied his burden of showing a breach, it may then fashion a remedy, including specific performance of the agreement or withdrawal of the plea. See Santobello, 404 U.S. at 263 (relief may include specific performance or withdrawal of plea); United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988)(same).

The record in this case clearly belies Movant's claim that the government breached the terms of the plea agreement. By entering into the agreement, the government agreed to recommend that Movant receive an offense level reduction for acceptance of responsibility and to recommend that Movant be sentenced to the low end of the sentencing guidelines range. See Plea Agreement at ¶9. The government was, however, not required to make such a recommendation if Movant: (1) failed or refused to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) misrepresented facts to the government prior to entering into the plea agreement; or (3) committed any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official. Id. The

37

plea agreement also explicitly provided that the government could inform the Court of facts relevant to sentencing, including all information concerning the offenses committed, whether charged or not. Id. at ¶7. Movant indicated to the Court during the change of plea proceeding that he executed the written plea agreement and he understood all terms of the agreement. See Transcript of Change of Plea Hearing conducted on September 21, 2009, July 10, 2009, at 8-9.

As stated throughout this report, and to be discussed in connection with the attack upon the sentence, the government was relieved of its obligation to recommend a reduction for acceptance of responsibility or a sentence at the low-end of the advisory guideline range because movant failed to uphold his end of the bargain by committing misconduct subsequent to entering into the plea agreement. Thus, the government did not violate the terms of the plea agreement. Despite the appeal waiver, appointed appellate counsel attempted to raise as an issue on direct appeal the denial of the two-point reduction in the offense level for acceptance of responsibility. However, since there was no breach of the plea agreement, the Eleventh Circuit properly enforced the appeal waiver and dismissed the appeal.[16] See United States v. Lalonde, No. No. l0-l0071-EE (11th Cir. May 25, 2010). See also Cr-DE# 52; Cv-DE# 14-4.

While the ultimate sentence imposed pursuant to Movant's guilty plea had not been contemplated in the pre-plea discussions and possibly after the change of plea proceeding, the government's

---

[16]A waiver of the right to appeal a *sentence* contained in a plea agreement does not waive all appeals, such as, the issue that the government breached the terms of a plea agreement. See United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004).

conduct was consistent with the parties' reasonable understanding of the written plea agreement, which Movant had read, understood and executed and which he agreed to be bound. The government agreed to recommend a sentence within the "advisory sentencing guideline range," which it did when it recommended the Court sentence Movant to a sentence in the mid-range of the guidelines (i.e., a 62 month sentence). Thus, Movant's claim that the government breached the terms of the plea agreement is meritless and he is entitled to no relief on the claim. See Santobello, 404 U.S. 257. Accordingly, any related claim that trial counsel's performance was ineffective for failing to object to a breach of the plea agreement by the government also fails, as meritless. See generally, Strickland, supra.

C. Lawfulness of Sentence Proceeding and Sentence Imposed

Movant further claims that his due process rights were violated during sentencing and the sentence imposed is unlawful, because (1) the Court improperly denied an unopposed motion to continue the sentencing hearing in order to give him additional opportunities to cooperate with the government; (2) the Court failed to ensure that he and counsel had discussed the PSI, as revised, and that he and counsel had received all necessary documents from the probation officer before sentencing; (2) his sentence is based upon incorrect statements made by the government and probation officer during sentencing; (3) the presentence investigation and interview were conducted in violation of Fed.R.Crim.P. 32; (4) he was improperly denied Jencks Act materials during sentencing; and (5) the Court improperly denied an adjustment for acceptance of responsibility and he is now entitled to resentencing based upon the affidavit executed by Michael Ammundsen which contradicts the untimely affidavits supplied by former employee Whiting and other untimely materials.

Movant is not entitled to relief on this ground, because the challenges to the sentence imposed are procedurally barred from postconviction review on the merits by the sentence appeal waiver contained in Movant's plea agreement. As stated, a motion to vacate under section 2255 is not meant to replace a direct appeal. Issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro v. United States, 538 U.S. 500 (2003). See also United States v. Frady, 456 U.S. 152 (1982); Lynn v. United States, 365 F.3d 1225, 1234-35 (11th Cir. 2004). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal and actual prejudice resulting from the alleged error or (2) actual innocence. Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614, 623 (1998). See also Bousley, 523 U.S. at 622; Jones v. United States, 153 F.3d 1305 (11th Cir. 1998)(finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test").

Other than the claim that he was improperly denied a reduction in his base offense level for acceptance of responsibility, the claims now raised by the movant with regard to the lawfulness of his sentence were not raised on direct appeal. Throughout the instant motion, Movant argues that counsel rendered ineffective assistance for failing to pursue the particular sentence challenges before or at sentencing. Generally, the claim of ineffective assistance of counsel may constitute cause for a procedural default. See generally Murray v. Carrier, 477 U.S. 478 (1986).

"[An] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). <u>See also</u> <u>United States v. Breckenridge</u>, 93 F.3d 132, 134 n.1 (4th Cir. 1996).

However, the Eleventh Circuit has held that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." <u>Williams v. United States</u>, 396 F.3d 1340, 1342 (11th Cir. 2005); <u>see also</u>, <u>Leach v. United States</u>, 171 Fed.Appx. 765 (11th Cir. 2006)(unpublished); <u>Johnson v. United States</u>, 2007 WL 4615236 *5-6 (S.D.Fla. 2007). As concluded correctly by the *Williams* court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." <u>Williams v. United States</u>, <u>supra</u>. A waiver is knowing and voluntary if 1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. <u>Id</u>. See also <u>United States v. Banks</u>, 350 Fed.Appx. 419, 420 (11th Cir. 2009)(enforcing a sentence appeal waiver to bar the defendant's challenges to the court's sentencing guideline calculations)(unpublished); <u>United States v. Ray</u>, 346 Fed.Appx. 507, 511 (11th Cir. 2009)(same)(unpublished).

Here, review of the transcript of the change of plea proceeding reveals that Movant acknowledged while under oath that he had read and discussed with counsel the terms and conditions of

the written plea agreement before he executed the agreement and that he had understood all terms and conditions. The Court thoroughly and fully questioned Movant about the appeal waiver during which Movant advised the Court that he understood the waiver. See Transcript of Change of Plea Hearing conducted on September 21, 2009, at 9-10. Movant further told the Court that he had fully discussed the appeal waiver with counsel and that he had no questions regarding the legal effect of the appellate waiver. Id. at 10. When asked whether he still desired to enter guilty pleas to the crimes charged, although the negotiated plea agreement contained an appellate waiver, Movant stated that he did. Id. The Court then expressly found that Movant had knowingly, intelligently and voluntarily waived his right to appeal his sentence in accordance with the plea agreement. Id. The appellate waiver in this case was clearly knowing and voluntary. There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal.

The record reveals that the waiver did not result in an unlawful denial of Movant's right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government, as found by the Eleventh Circuit. Movant's direct appeal was dismissed after the Eleventh Circuit expressly found the waiver to have been voluntarily made when Movant entered into the negotiated plea agreement. See United States v. Lalonde, No. 10-10071-EE (11th Cir. May 25, 2010)(ruling, "Appellee's motion to dismiss this appeal due to a valid appeal waiver contained in Appellant's plea agreement is GRANTED."). Under the circumstances presented here, the movant is not only precluded from challenging the manner in which sentence was imposed, but is also precluded from challenging the sentence itself in the guise of an ineffective assistance of counsel claim. Williams, supra.

Moreover, Movant's claim that his sentence was imposed in violation of the sentencing guidelines is not reviewable on the merits on an alternate basis. Sentencing errors are generally not cognizable in a collateral attack unless the error complained of resulted in a complete miscarriage of justice. See e.g., Burke v. United States, 152 F.3d 1329 (11th Cir. 1998)(holding that nonconstitutional claims, such as the claim that a sentence was contrary to a subsequently enacted clarifying sentencing guidelines amendment, can be raised on collateral review of a conviction only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994)(stating that, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under §2255."). See also 28 U.S.C. §2255(a); Gilbert v. United States, 640 F.3d 1293, 1321 (11th Cir. 2011)("Gilbert III")(en banc)(stating that "Gilbert's claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim. If it were, every guidelines error would be a constitutional violation.").[17] Since Movant was afforded due process at the sentencing hearing and has not demonstrated a constitutional violation or an error which resulted in a "complete miscarriage of justice," his challenge to his sentence is not cognizable in this proceeding.

D.    Ineffective Assistance of Trial Counsel Regarding Sentencing

Even if this Court were to review Movant's claim that he

---

[17]It is noted that the Eleventh Circuit in Gilbert explicitly did not address the issue whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an initial collateral attack. The Eleventh Circuit concluded that it had "no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence." Gilbert v. United States, 640 F.3d 1293, 1306 (11th Cir. 2011).

received ineffective assistance of counsel with regard to the presentence investigation and interview as well as the sentence imposed, Movant would nevertheless not be entitled to relief on this claim.[18]

Review of the record indicates that the Movant filed several objections to the PSI, which included objecting to the Probation Officer's statement that Movant may have violated the terms of the plea agreement and finding that Movant had not accepted responsibility and did not qualify for the three-point reduction. See Objections to the Presentence Investigation Report. (Cr-DE# 31). See also Addendum to the Presentence Report; Second Addendum to the Presentence Report; Third Addendum to the Presentence Report. Besides filing objections, on November 24, 2009, trial counsel sought a continuance of the upcoming sentencing. See Unopposed Motion to Continue Sentencing. (Cr-DE# 29). The motion stated that Lalonde had entered into a Plea Agreement which contemplated his cooperation with the government in the investigation of the instant case and other matters to the extent that a downward departure under the sentencing guidelines would be appropriate. Id. However, due to circumstances beyond his control, the cooperation had been delayed. Id. Lalonde, therefore, requested a sixty-day continuance of the sentencing so that he could effectuate full cooperation. Id. The motion indicated that trial counsel had spoken with AUSA Jeffrey Kay and AUSA Kay had no

_____

[18]More specifically, Movant alleges that his lawyer provided ineffective assistance with regard to the sentence, because counsel failed to (a) obtain all necessary materials from the government and adequately prepare for sentencing; (b) challenge the late disclosure of evidence presented at sentencing and challenge the incorrect statements made by the government and probation officer during sentencing; (c) properly cross-examine the government's witnesses and/or present defense witnesses; (d) request a downward departure based on his extensive cooperation with the government, family obligations, aberrant behavior and alien status; (e) present mitigating evidence; (f) request sentencing parity; and (g) properly seek a motion for continuance of the sentence proceeding.

objection to the continuance. Id. By order entered on December 3, 2009, the motion was denied without explanation. (Cr-DE# 30).

Sentence proceedings took place on December 18, 2009. See Transcript of Sentencing Hearing. (Cr-DE# 49; Cv-DE# 14-6). At the outset of the proceedings, the Court asked trial counsel and Movant whether they had received a copy of the PSI and had reviewed the PSI to which they both responded in the affirmative. Id. at 2. The parties next told the Court that they jointly objected to THE Probation Officer's finding that the base offense level should be increased by two-levels due to the finding of $1,000,000 in gross receipts. Id. at 3. The Court sustained the joint objection. Id.

The remainder of the hearing focused on whether Movant carried his burden with regard to the three-point reduction for acceptance of responsibility. Id. at 3-13. Trial counsel argued that Movant had clearly demonstrated his acceptance of responsibility and was in the process of cooperating with the government, although his cooperation had been frustrated by a then-ongoing investigation by the United States Attorney's Office in the State of New Jersey. Id. at 3-5. Trial counsel informed the Court that Movant intended to continue with the cooperation after sentencing. Id. at 4. Trial counsel also stated that he had just a few minutes before the proceeding been provided with an affidavit that had been filed in the civil FTC case which was apparently to be relied upon by the government to prove that Movant was not entitled to acceptance of responsibility. Id. at 4-5.

In opposition, the government argued that Movant was not entitled to a reduction for acceptance of responsibility in that he had violated paragraph 9.(3) of the plea agreement. Id. at 6-7. The government stated in pertinent part as follows:

Number one, we have the probation officer's observations in

her field visit to the defendant's business on October 28, '09 that she saw a script in the business, she saw various scripts in the business, one of them for the credit counseling that the defendant did as well as the scripts soliciting for mortgage refinancing, which is evidence that at least the Court -- from which the Court could infer that the defendant was continuing to operate his mortgage refinancing business.

We also believe that the FTC complaint with those civil allegations of the defendant continuing to commit and marketing a bogus loan modification services in which he falsely claimed that they could obtain -- consumers could obtain favorable terms and more favorable terms and interest rates for consumers' existing mortgages.

We believe that as well supports the notion that the defendant was continuing to engage in that conduct. And I believe their complaint alleged that up until November of this year, the defendant was committing those kinds of offenses.

In addition, the probation officer in the third addendum references the declaration of Anthony Whiting, a former employee of Lalonde's companies who said that he worked for the defendant up to November 16th, 2009.

And he and others who were employed by the defendant offered a program to consumers who had expressed an interest in obtaining a home mortgage and had credit problems. And the declaration references that the defendant would offer these services to -- for credit repair and then obtain mortgages for them.

Given the defendant's involvement in defrauding consumers, we believe it's clear that the defendant continued to commit misconduct after he had entered into this plea on September 21, 2009.

Id. at 6-7. See also Third Addendum to the Presentence Report.[19]

---

[19]The Probation Officer consistently maintained in the PSI and Addenda thereto that Movant was not entitled to the three-level decrease for acceptance of responsibility. In the Third Addendum, the Probation Officer stated in pertinent part:

The probation officer has not recommended a reduction for acceptance of responsibility due to the defendant's actions which resulted in the Federal Trade Commission (FTC) obtaining a temporary restraining order against him and his various companies and closing down his business operations. According to records received from the FTC, the defendant, through his various businesses, solicited people who were seeking mortgages. In many of these cases, the individuals seeking mortgages did not have an adequate credit score to obtain a mortgage. Representatives of Scoreleaper, one of Lalonde's entities, would assert that they could help repair their credit scores to a level where one of Lalonde's companies would be able to obtain a mortgage for them. The probation officer read the Declaration of Sanford Kreisler, a person who paid $698 for credit repair that would reportedly

Trial counsel responded that the plea agreement had not prevented Movant from working in the mortgage business; the FTC complaint should not be considered when determining acceptance of responsibility in the instant criminal case; the newly reviewed affidavit did not support any finding that Movant had committed a fraud; Whiting was not credible in that he was a disgruntled employee; Movant had gone to great lengths to cooperate with the government in this case and in New Jersey; and it was in no way clear that the alleged violations had been committed *after* entry of the plea agreement. Id. at 8-10, 12.

The government responded to trial counsel's arguments, relying on the allegations in the FTC complaint to support a finding that movant continued to engage in fraud by defrauding consumers. Id. at 11-12. With regard to the timing of the continuing fraud, the government relied upon the declaration of the former employee, Anthony Whiting, which indicated that he had worked for Movant up to November 16, 2009, subsequent to the guilty plea on September 21, 2009. Id. Also, a police officer visited Movant's place of

---

enable him to secure a mortgage through a related entity. Mr. Kreisler advised that Scoreleaper challenged everything in his credit history, even items Kreisler told Scoreleaper were correct. Kreisler said he received a loan commitment letter from Delta Financial, another one of Lalonde's entities, but the letter advised that this commitment was subject to conditions, such as credit clearance from Scoreleaper. Mr. Kreisler became suspicious and did some research on Stephen Lalonde. He learned of Lalonde's legal problems and requested a refund. However, he never received a refund.

The probation officer also reviewed the Declaration of Anthony Whiting, a former employee of Lalonde's companies. He advised that while working for Lalonde's businesses through November 16, 2009, he and others offered a program to consumers who had expressed interest in obtaining a home mortgage and had credit problems. Whiting said they sold consumers a program which involved credit repair and then obtaining mortgages for them. Whiting identified Lalonde as the sole head of the various companies for which he worked (to include OK Close, 1st Guaranty, Scoreleaper, Delta Financial Management and Delta Partners). Whiting said they charged $698 per person or $998 per couple for these credit repair/mortgage services. Whiting stated that he became upset with Lalonde when Lalonde told him they should put off getting loans for clients who had improved their credit scores to a level that should have qualified them for loans. Whiting reported that to his knowledge, no consumers received loans through this program.

(Third Addendum to the Presentence Report at 2).

business on October 28, 2009, and observed that the business was active with scripts laying around, as well as a list of employees, sales, positions, a mortgage refinancing script and a consumer problem script. Id. at 12-13. The government submitted that the evidence established that Movant's business was active and ongoing, and that he was continuing to commit consumer and possibly mortgage fraud. Id. at 13. Counsel again objected and argued that the evidence was insufficient. Id. During the hearing, the Court asked the Probation Officer whether Movant had been cooperative and the Probation Officer responded that Movant had not provided him with the requested financial documentation and had not assisted him in a visit to the business location, requiring him to visit Movant's business on his own and gain entry with the assistance of the landlord. Id. at 10-11. The Probation Officer stated, "I would not say he was cooperative with me in the process. I asked for a lot of information with respect to his finances and his employment, and I did not receive anything." Id. at 11.

The Court found that Movant had failed to establish by a preponderance of the evidence that he had refrained from engaging in criminality subsequent to the entry of his guilty plea. Id. at 13. Consequently, the total base offense level was 25. Id. at 14. With a base offense level of 25 and a criminal history category of I, the advisory imprisonment range was 57 to 71 months. Id. The government recommended a sentence of 62 months while trial counsel argued for a sentence of 57 months. Id. at 14-16. Before sentence was imposed, Movant personally addressed the Court, expressing remorse for his actions. Id. at 16. After having listened to the Movant and argument from counsel, and after considering the statutory factors set out in 18 U.S.C. §3553, the Court sentenced Movant to a term of imprisonment of 60 months followed by a three-year term of supervised release. Id. at 16-19. Restitution in the amount of $1,897,268.05 was ordered. Id. at 17. Once sentence had

been imposed, the Court noted: "The Court might add that the Court is of the opinion that a 60-month sentence is reasonable *regardless of the reduction or not for acceptance of responsibility*." (emphasis added). <u>Id</u>. at 19. The Court then advised Movant of his right to a direct appeal. <u>Id</u>. Before the proceeding concluded, trial counsel informed the Court that Movant was then actively cooperating with the government and law enforcement authorities in New Jersey and requested that Movant be permitted to remain on bond. <u>Id</u>. at 20. The Court denied the request, stating: "Mr. Udolf, you know the great respect this Court has for you and your legal ability. But I'm not impressed by your client. And I think he should be remanded." <u>Id</u>. at 20.

Review of the record demonstrates that trial counsel's performance was not deficient for any or all the reasons alleged. More specifically, pursuant to the plea agreement, the parties agreed that they would "jointly recommend that the court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case." <u>See</u> Plea Agreement at ¶5. Counsel was bound by the terms of the plea agreement not to seek any downward departures. As to arguing for sentencing parity with defendants committed of similar crimes in unrelated cases, counsel was clearly not under any duty to do so in that the Sentencing Guidelines anticipated sentencing disparity between defendants involved in similar offenses and the issue of sentencing disparity among co-defendants has been rejected by the Eleventh Circuit. <u>See e.g.</u>, <u>United States v. Requeiro</u>, 240 F.3d 1321 (11th Cir. 2001)(holding that disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal); <u>United States v. Chotas</u>, 968 F.2d 1193, 1197-98 (11th Cir. 1992)(holding that disparate sentencing among codefendants was adequately considered by the Sentencing Commission and is therefore not an appropriate ground for

departure). Counsel is not required to raise every available nonfrivolous defense. <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 127, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009)(stating that Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success). Further, it cannot be overlooked that counsel successfully convinced the government to jointly oppose the two-level enhancement for deriving more than one million dollars in gross receipts from a financial institution, and the Court granted the objection, thereby, reducing movant's offense level.

It is apparent that counsel was in fact prepared for sentencing and was effective in reducing movant's offense level. Movant's postconviction submission of the Declaration of Michael Ammundsen made under the penalty of perjury on May 25, 2011, does not indicate otherwise.[20] <u>See</u> Declaration of Michael Ammundsen executed on May 25, 2011. (Cv-DE# 1-3). Recanting affidavits and witnesses are viewed with extreme suspicion by the courts. <u>See</u> <u>Byrd v. Collins</u>, 209 F.3d 486, 508 n.16 (6th Cir. 2000)(<i>quoting</i> <u>Spence v. Johnson</u>, 80 F.3d 989, 997 (5th Cir. 1996)). Ammundsen's declaration should be viewed with such suspicion. Ammundsen states in his declaration that during the instant prosecution he had several conversations with Movant regarding the criminal charges. <u>See</u> Declaration of Michael Ammundsen executed on May 25, 2011, at

---

[20]According to Michael Ammundsen's declaration, he was employed as Chief Technology Officer for approximately four years for companies in which Movant held an interest and had known Movant in both a personal and professional capacity for several years. <u>See</u> Declaration of Michael Ammundsen at ¶¶3, 13. (Cv-DE# 1-3). He states in his declaration that there was speculation and insinuations that Whiting had been smoking marijuana with his employees during business hours. <u>Id</u>. at ¶10. He further states that in November, 2009, he heard a disagreement between Movant and Whiting which involved the termination of Whiting for smoking marijuana during business hours and for not following company policies. <u>Id</u>. at ¶11. Ammundsen goes on to state that he did not believe that Movant had been involved in the criminal conduct charged and that he witnessed no criminal conduct on the part of Movant. <u>Id</u>. at ¶¶13-14. He also stated that Whiting's affidavit had been false and Whiting had misrepresented Movant's actions and was in fact a disgruntled employee. <u>Id</u>. at ¶¶12-15.

¶13. He further states that "[a]t Mr. Lalonde's sentencing, I was made aware of the fact that Mr. Whiting had produced a false affidavit." Id. at ¶12. At no time during the sentencing did Ammundsen attempt to aid his former employer and supposed friend and voice his concerns about Whiting's claims against Movant. Nor did he do so until approximately one and one-half years after the sentence proceeding where the now-claimed false information was revealed. It is also important to note that trial counsel did challenge the credibility of Whiting by pointing out to the Court that Whiting "was a disgruntled employee," and "had been fired by Mr. Lalonde." (Transcript of Sentencing Hearing conducted on December 18, 2009, at 9). The outcome of the sentence proceeding would not have been different even if Ammundsen had testified at sentencing. Accordingly, an evidentiary hearing is not warranted in this postconviction proceeding on this issue, as Movant maintains.

Further, the fact that trial counsel may not have attended Movant's interview with the probation officer does not entitle him to any relief. Contrary to Movant's belief, interviews with the probation officer following a Rule 11 hearing are not considered a "critical stage of the criminal proceedings," and the Sixth Amendment right to effective assistance of counsel therefore does not guarantee Movant the right to have counsel present during such an interview. See United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993)("[T]he presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir. 1991)("There is no such right (to counsel) at a routine presentence interview because the presentence interview is not a critical stage of the criminal proceedings."); United States v. Simpson, 904 F.2d 607, 611 (11th Cir. 1990)(acknowledging that other circuits considering issue have concluded that interview with probation officer is not a critical stage of criminal proceedings at which

counsel is guaranteed by Sixth Amendment). It is well-settled that a defendant cannot be deprived of effective assistance of counsel where there is no constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (*per curiam*). Thus, Movant's allegations are insufficient to establish that his attorney provided ineffective assistance with regard to the interview with the probation officer. See Phillips v. United States, 2011 WL 3022557, *7 (S.D.Ga. 2011). Nor is counsel required to attend the presentence interview under Fed.R.Crim.P. 32(c)(2). Rule 32(c)(2), Fed.R.Crim.P. provides only that the probation officer must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.

Movant has also failed to validly allege any prejudice resulting from trial counsel not attending his interview with the probation officer. Although he claims that he lost a reduction in total offense level as a result of counsel's non-attendance, it was his own unlawful actions committed subsequent to the entry of the plea agreement that caused Movant not to receive that benefit of the plea agreement not trial counsel's failure to attend his interview with the Probation Officer. And, regardless of actual attendance, trial counsel was aware of the presentence report and addenda thereto and objected in writing to the findings of the probation officer and again at sentencing. See e.g., Second Addendum to the Presentence Report; Third Addendum to the Presentence Report. Because the record affirmatively contradicts Movant's argument that counsel did not fully review the PSI and addenda thereto or challenge the findings and determinations of the probation officer, the undersigned finds that counsel did not provide ineffective assistance in these matters. See Salazar-Flores v. United States, 2011 WL 2729077, *13-14 (M.D.Fla. 2011).

Movant cannot satisfy the prejudice prong of *Strickland* for an

alternate reason. It is apparent that the Court was not under any circumstance inclined to sentence Movant to any term of imprisonment less than that imposed. If Movant had received the reduction for acceptance of responsibility, resulting in a base offense level of 22, his guidelines sentencing range would then have been 41-51 months. The Court's remarks make it clear that under that scenario, the Court would have then departed upward from the guidelines range to impose a 60-month term of imprisonment. Additional argument by trial counsel or the presentation of any possible other evidence would, therefore, have not resulted in a different sentence than that imposed. Thus, any deficient performance on the part of counsel did not affect the outcome of Movant's sentence, resulting in constitutionally effective assistance. See Boone, 62 F.3d at 327; Spriggs v. Collins, 993 F.2d at 88. See also Glover, 531 U.S. 198.

### E. Ineffective Assistance Regarding Appellate Counsel

Movant also claims that he received ineffective assistance of appellate counsel for several enumerated reasons. He first complains that appellate counsel merely filed a "boiler plate" brief on direct appeal, only raising the sole issue that he had been improperly denied acceptance of responsibility, as promised. As indicated, Movant waived his right to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure and/or a variance from the guideline range established at sentencing. That was not the case herein. The appellate waiver was upheld by the Eleventh Circuit. See United States v. Lalonde, No. No. 10-10071-EE (11th Cir. May 25, 2010). See also Cr-DE# 52; Cv-DE# 14-4.

As to Movant's claim that the government violated the terms of

the plea agreement and that issue should have been raised on direct appeal,[21] appellate counsel was not ineffective for failing to raise this issue because the government did not violate the terms of the plea agreement, as indicated in the above-discussion. Movant goes on to contend that trial and/or appellate counsel rendered ineffective assistance when they ignored his requests to withdraw his guilty plea after sentencing when he did not receive the sentence he anticipated. The plea agreement clearly provided that "the defendant may not withdraw the plea solely as a result of the sentence imposed." See Plea Agreement at ¶4. Movant advised the Court during the change of plea proceeding that he understood the terms of the written agreement which he executed. Further, even if such a motion to withdraw had been filed, Movant would not have prevailed on the motion in that his pleas of guilty were voluntarily entered with full knowledge of the consequences of his plea and with the assistance of competent counsel who he advised the Court he was satisfied. See Fed.R.Crim.P. 11 (d), (e).

Movant also alleges that trial and/or appellate counsel rendered ineffective assistance when no objection was raised regarding the bias of the Court. In support of his claim, Movant relies upon the following remarks made by the Court at the close of the sentencing hearing in response to trial counsel's request that Movant remain on bond through the holidays so that he could continue his cooperation with the government: "Mr. Udolf, you know the great respect this Court has for you and your legal ability. But I'm not impressed by your client. And I think he should be remanded. So the request will be respectfully denied." (Transcript of Sentencing Hearing at 20). The accused in any criminal trial is

_____

[21]As stated *infra* at n.15, a waiver of the right to appeal a sentence contained in a plea agreement does not waive on direct appeal the issue that the government breached the terms of a plea agreement. See United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004).

guaranteed the right to an impartial tribunal. See Nethery v. Collins, 993 F.2d 1154, 1157 (5th Cir. 1993), cert. denied, 511 U.S. 1026 (1994). To obtain relief as a result of alleged judicial bias, the petitioner must establish that the trial judge "was influenced by interests apart from the administration of justice and this bias or prejudice resulted in rulings based on other than facts developed [during the proceedings]." Id. See also 28 U.S.C. §§144 and 455; Hamm v. Members of Bd. of Regents of State of Fla., 708 F.2d 647, 651 (11th Cir. 1983). In order for disqualification or recusal, the judge's bias must be personal and extrajudicial, deriving from something other than the case. Id. See also Liteky v. United States, 510 U.S. 540, 555 (1994)("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion."); McWhorter v. City of Birmingham, 906 F.2d 674, 678-79 (11th Cir. 1990); see also, Wiley v. Wainwright, 793 F.2d 1190, 1193 (11th Cir. 1986). The appearance of bias is insufficient to establish a due process violation requiring recusal of state judge. See Davis v. Johnson, 506 F.3d 1325 (11th Cir. 2007).

Movant's allegations fall woefully short of demonstrating bias. He has failed to show that recusal or any other relief was warranted under the applicable statutes or caselaw. See United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004). Movant's only evidence of bias is the Court's denial of his request to remain on bond so that he could purportedly cooperate with the government. Such adverse ruling, or any other adverse ruling for that matter, is insufficient to show bias on the part of the Court. The now-relied upon remark does not indicate any personal bias or prejudice against him, but pertains to Movant's failure to fully cooperate with the probation office and his failure to refrain from engaging in unlawful activity after entry of his guilty plea. Consequently, trial and/or appellate counsel did not render constitutionally ineffective assistance for failing to pursue the

issue of bias or recusal.

In sum, because the grounds Movant now claims should have been raised on direct appeal were without merit and/or waived by the appellate waiver, Movant has not demonstrated that he received ineffective assistance of appellate counsel. The Sixth Amendment does not require appellate attorneys to raise every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983).

## F. Cumulative Errors

Finally, Movant alleges that the cumulative impact of the errors of counsel resulted in a violation of his Sixth Amendment rights. It is clear that Movant's cumulative error claim must fail. Since none of Movant's individual claims of error or prejudice have any merit, there is nothing to accumulate. Morris v. Secretary, Dept. of Corrections, ___ F.3d ___, 2012 WL 1370848, *14-15 (11th Cir. April 20, 2012)(holding that Petitioner's cumulative error claim clearly fails in light of the absence of any individual errors to accumulate), citing, United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005); United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984).

## VII. Evidentiary Hearing

Movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel or any other claim raised herein should be denied, because no further factual development is necessary to the resolution of his claims. See Rules Governing §2255 Proceedings, Rule 8, 28 U.S.C. foll. §2255. Because, as indicated by the discussion above, the motion and the files and records of the case conclusively show that Movant is entitled to no

relief, an evidentiary hearing is not warranted. <u>See</u> <u>Holmes v.</u> <u>United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, <u>Guerra</u> <u>v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979).

## VIII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Movant cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted

to this report and recommendation.

IX. <u>Conclusion</u>

Movant has failed to demonstrate a breach of the plea agreement, that his pleas of guilty were involuntarily entered, that his attorney rendered ineffective assistance with regard to the entry of the guilty plea and resultant sentence and/or that his sentence was unlawful.[22] It is therefore recommended that this motion to vacate be DENIED, and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 18th day of May, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Stephen Lalonde, <u>Pro</u> <u>Se</u>
      Jail No. 501109985
      Broward County Main Jail/4B
      P.O. Box 9356
      Fort Lauderdale, FL 33310

      Laurie E. Rucoba, AUSA
      U.S. Attorney's Office
      500 East Broward Boulevard, 7th Floor
      Fort Lauderdale, FL 33394

_____

[22]It is noted that the undersigned has conducted a careful and thorough review of Movant's motion to vacate, as twice supplemented, along with his extensive supporting memorandum of law and attached exhibits. Any additional claim or subclaims not specifically addressed in this Report are found to be without merit.